Becker v. City of Washington.

BECKER v. CITY OF WASHINGTON, *Appellant.*

1. **Pleading**: CITY ORDINANCE. In pleading that a city ordinance was duly passed, it is necessarily implied that all essential antecedent acts, requisite to the legal enactment of the ordinance, were done.

2. **City Ordinance**: MACADAMIZING STREET. A city ordinance providing for grading and macadamizing a street is not void for uncertainty because the specifications for the work are not embodied in the ordinance, they being referred to as on file in the office of the city clerk.

3. **City Ordinance, Signature of**: STATUTE. Where the mayor is *ex-officio* president of the board of aldermen, his signature of an ordinance as mayor is a sufficient compliance with Revised Statutes, section 4918, which provides that no bill shall become an ordinance until the same is signed by the president of the board of aldermen and the mayor.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, Judge.

AFFIRMED.

*J. C. Kiskaddon* for appellant.

(1) The city, as such, can only grade or improve streets by ordinance for that purpose. R. S., sec. 4940. (2) The city is not liable for any damage done in grading a street, unless there was a valid ordinance authorizing the work to be done. *Saxton v. St. Joseph,* 60 Mo. 153; *Saxton v. Beach,* 50 Mo. 488; *Brown v. Cape Girardeau,* 90 Mo. 377; *Worley v. Columbia,* 88 Mo, 106, 111; *Rowland v. Gallatin,* 75 Mo. 134; *Keating v. Skiles,* 72 Mo. 97. (3) The law provides that "no bill shall become an ordinance until the same is signed by the president of the board of aldermen and the mayor." None of the ordinances read in evidence were signed by

the president of the board of aldermen. R. S., sec. 4948. (4) This is mandatory and must be complied with, or the bill does not become an ordinance. *Saxton v. Beach*, 50 Mo. 488; *Saxton v. St. Joseph*, 60 Mo. 153; *Graham v. Carondelet*, 33 Mo. 262; *Keating v. Skiles*, 72 Mo. 79; *Keating v. Kansas City*, 84 Mo. 415; *Carondelet v. Wolfert*, 39 Mo. 305; *Ackermann v. Bergen*, 33 N. J. L. 39; *Twiss v. Port Huron*, 6 West. Rep. [Mich.] 353; *In re Smith*, 52 N. Y. 526; *In re Phillips*, 60 N. Y. 16; *In re Little*, 60 N. Y. 343; *State v. Hoboken*, 38 N. J. L. 110; *State v. Smith*, 22 Minn. 218; *People v. Special Sessions*, 7 Hun [N. Y.] 214; 1 Dill. Mun. Corp. [3 Ed.] secs. 288, 292, 309. (5) The ordinance pleaded in the petition, under which the trespasses complained of are alleged to have been committed, refers to the specifications of Julius Wilhelmi, civil engineer, "now on file in the office of the city clerk," as designating how the work shall be done. There is no evidence of the existence of any such specifications, or that the same ever was on file in the office of the city clerk. This ordinance is void for uncertainty. *Kearney v. Andrews*, 2 Stock. [N. J.] 70, 76; *McConnil v. Jersey City*, 39 N. J. L. 38; *Foss v. Chicago*, 56 Ill. 374; *Jenks v. Chicago*, 56 Ill. 397; *San Francisco v. Brickwedel*, 60 Cal. 166. (6) When a corporation can, in the first place, only lawfully act by ordinance, the ratification of such an act must be by ordinance; and it must expressly direct the act to be done—it cannot adopt an act already done; or, if it can, it must adopt it expressly, and not by implication. *McCracken v. San Francisco*, 16 Cal. 591; *Workmann v. Chicago*, 61 Ill. 463; R. S., sec. 4947.

*Crews & Booth* for respondent.

(1) Prior to the adoption of the constitution of 1875, the authorities of a town or city, having control

of its streets, might enter on and dig down or fill up streets of the town or city, and for damage done to adjoining lands there was no redress, except for negligence or unskillfulness in the execution of the work. But by section 21, of article 2, of that constitution, cities and towns are deprived of this immunity from liability and must answer for all damage which, by filling up or digging down a street, they do to adjoining land, even though the work be carefully and skillfully done. *Householder v. Kansas City*, 83 Mo. 488; *Schumacher v. St. Louis*, 3 Mo. App. 297. (2) The ordinance introduced in evidence was signed by the mayor. The signature of the mayor was the signature of the president of the board of aldermen. (3) Appellant's objection that the evidence does not show that the ordinance was read three times, nor that a majority of the board voted for it, nor that the yeas and nays were entered on the journal, comes too late, not having been made in the trial court. (4) The ordinance was not void on its face for uncertainty. *Kearney v. Andrews*, 2 Stock. (10 N. J.) 70; *Werth v. City*, 22 Mo. App. 12; *Burr v. Dana*, 22 Cal. 12. (5) The acts of officers are presumed to be regular, so far as to throw the burden of proof on the party assailing such acts, and this presumption is not limited to officers of state. Wharton on Evid. [2 Ed.] sec. 1318. (6) Ratification is equivalent to prior authorization. *Ferris v. Thaw*, 72 Mo. 446. And upon principle there is no more occasion for a specific averment of ratification than for a specific averment that a contract was made by one by his agent. The proof in this case showed both a prior authorization and a subsequent ratification of the wrongful acts complained of, and on either of these grounds the city was liable. *Schumacher v. St. Louis*, 3 Mo. App. 297. (7) There is a distinction between evidence to contradict a record and evidence to show facts omitted to be stated on a record. Greenl. on Evid. [3 Ed.] sec. 300.

BRACE, J.—The defendant is a city of the fourth class. The plaintiff is the owner of a house and lot on Main, between Jefferson and Lafayette streets, in said city. On the nineteenth day of June, 1882, the board of aldermen of said city, by its orders entered upon its journal, ordered that Main street, between two said last-mentioned streets, under the direction and superintendence of its street committee and street commissioner, be lowered, graded, macadamized, and guttered according to plans and specifications ("now") then on file in the office of the city clerk. And on the third of July, 1882, to carry such orders into effect, passed the following ordinance, which, on the same day, was signed and approved by the mayor, there being at that time no president of the board of aldermen:

"Be it ordained by the board of aldermen of the city of Washington, as follows:

"Section 1. All that part of Main street, in the city of Washington, between Market and Jefferson streets, shall be lowered to the grade now established, and recorded in the recorder's office in Franklin county, Missouri, and all that part of Main street, between Jefferson and Lafayette streets, in said city, shall be lowered, graded, macadamized, and guttered, according to specifications therefor made by Julius Wilhelmi, Esq., civil engineer, and now on file in the office of the city clerk.

"Section 2. The work required to be done by the provisions of the preceding section shall be operated, managed, and controlled by the street commissioner and street committee of the board of aldermen of the city, and shall be commenced as soon as practicable.

"Section 3. This ordinance shall take effect and be in force from and after its passage."

Prior to the passage of the ordinance Main street

had been graded, macadamized, and pavements laid in front of defendant's lot, and defendant built his house with reference to that grade. The work provided for in the ordinance was done by and under the superintendence of the city's street commissioner, and paid for by the city. The macadam was removed and the grade of the street in front of defendant's lot lowered from three to five feet. The evidence tended to show that the defendant's property had been depreciated to an amount not less than three hundred nor more than two thousand dollars by such change of grade. The jury returned a verdict for plaintiff for seven hundred and twenty-five dollars.

The defendant contends that the city is not liable for any damage done to plaintiff's property in grading the street unless there was a valid ordinance authorizing the work to be done, and that the ordinance given in evidence in this case is not valid because it was not signed by the president of the board of aldermen, and the specifications for the work were not embodied in the ordinance; and further contends that plaintiff ought not to recover in this action because it was not alleged in the petition or shown in evidence that the ordinance was so signed, nor that it was read three times, nor that a majority of the board of aldermen voted for it, nor that the ayes and noes were endorsed upon the journal. It is sufficient to say, in regard to this last contention, that it was not necessary that plaintiff in his petition should have averred that every essential antecedent act requisite to the legal passage of the ordinance had been done. These are all necessarily implied in the allegation that the ordinance was duly passed ( *Werth v. City of Springfield,* 78 Mo. 108), and that, upon the offer of the ordinance in evidence, the only grounds of objection to its introduction were that it was not signed by the president of the board and the specifications for the work were not embodied therein. Parties cannot raise

objections on appeal that were not raised and passed upon by the court below. No good reason has been or can be assigned, why the specifications should have been embodied in the ordinance, nor can it be shown how the omission to do so could in any manner affect the validity of the ordinance. The reference to them as on file in the office of the clerk, where they could be seen by any one interested, made the ordinance as definite and certain in that respect as if they had been embodied in the ordinance. *Id certum est quod certum reddi potest*, and in this connection, it may be added that it does not "lie in the. mouth" of the defendant now to assert that the specifications were not on file in the office of the city clerk at the time the ordinance passed, in the face of its admission, on its own record, and in the recitals of the ordinance itself, that at that time they were on file there.

The following are the sections of the statute bearing upon the question of the alleged invalidity of the ordinance, for the reason, as is contended, that it was not signed by the president of the board of aldermen. R. S., 1879, chap. 89, art. 5:

"Section 4948. No bill shall become an ordinance until the same is signed by the president of the board of aldermen and the mayor.

"Section 4949. Every bill presented to the mayor and returned to the board of aldermen with the approval of the mayor, shall become an ordinance, and every bill presented as aforesaid, but returned with his objections thereto, shall stand reconsidered. * * *

"Section 4958. The mayor shall have a seat in the board of aldermen. * * *

"Section 4965. The mayor shall preside at all the meetings of the board of aldermen, and in the absence of the mayor the board shall elect one of their own members to occupy his place temporarily, who shall be styled 'acting president of the board of aldermen.'

"Section 4966. When any vacancy shall happen in the office of mayor, or in case of temporary absence of the mayor, until he shall return the acting president of the board of aldermen, for the time being, shall perform the duties of mayor."

It will be observed from the foregoing provisions that the mayor is *ex-officio* president of the board of aldermen. The board can have no other president except in case of vacancy or his absence. When he is absent the board may elect an acting president, and in such cases when the board passes an ordinance the acting president of the board should sign it in order to authenticate the action of the board to the mayor for his approval or disapproval, but when he is present the ordinance can and ought only to be signed by him. He is then president of the board and he has no need of any authentication of the act of the board over which he presided, and which was passed in his presence, and of which he is fully cognizant; and while it would have been more formal for him to have signed the ordinance as *ex-officio* president of the board of aldermen and his approval as mayor, yet his signing the ordinance as mayor is a substantial compliance with the requirements of the statute.

Since the ordinance is found to be valid it is not necessary to discuss or express an opinion upon defendant's general proposition, "that the city is not liable for damage done in grading the street unless there was a valid ordinance authorizing the work to be done," nor to consider the other ordinances introduced tending to show payment by the city for the work, to which the same objections were made, and it goes without saying, the ordinance being valid, the defendant received no harm if the question of its validity was, by the instruction of the court, submitted to the jury, as is contended.

The judgment of the circuit court is affirmed. All concur, except Ray, J., absent.