(Hamilton County Common Pleas.)

WILLIAM M. AMPT, on behalf of the City of Cincinnati, v. THE CITY OF CINCINNATI, August Herman et al.

The act authorizing the construction of new water-works in Cincinnati, provides that "the commissioners shall, before entering into any contracts, cause plans and specifications, detailed drawings of forms of bids to be prepared, Held, that under this provision the said commissioners are the judges of the sufficiency of such plans. However meager such plans, specifications and drawings may appear to one unaccustomed to such matters, if they convey to the bidder sufficient knowledge upon which to base a definite bid for the work to be done, then the terms of the statute would be complied with.

It is no objection to the contract that the specifications of the commissioners provide for, permit and invite alternative bidding.

The mere fact that each bidder was to submit a full detailed plan, though bidding according to the city's plan and specifications, did not render bids non-competitive, since the detailed plans furnished by bidders were to advise the city of the interpretation of its own plans and specifications by the bidders, and their method of execution.

The fact that certain matters are left to the determination of the engineers is not a delegation of power by the water-works commissioners to such engineers.

It is not an objection if a bidder, contracting to do the work specified for a certain sum, which sum is the lowest and best of all the bidders, tenders to the city extra work not included in the bid, and for which the city did not advertise or submit plans and specifications, but which he offers to do for nothing.

Modifications of a contract made as provided by law, and not susbtantially affecting the general purpose and operation of the old contract, can be made and will be lawful.

The legislature did not intend that the commissioners should be individually experienced in every detail of every department of the work, but only that the commissioners should exercise the ordinary good business sense of practical men. Therefore, notwithstanding that the language of the statute is in its nature mandatory, nevertheless there is vested in the commissioners a certain discretion as to carrying out of the plans proposed, providing that discretion is not abused, and that they act in good faith.

S. W. SMITH, J.

This is an action brought by William M. Ampt in behalf of the city of Cincinnati against August Herman, Loepold Markbreit, Charles M. Holloway, Morris J. Freiberg and William B. Melish, Board of Trustees and Commissioners of the Water-Works of the City of Cincinnati, appointed and acting under an act entitled "an act to provide for water-works purposes in cities of the first grade of the first class," sections 2435-1 to 2435-18, Revised Statutes of Ohio, to contest the validity of the contract made with the Lane & Bodley Company of Cincinnati for the erection of certain pumps, engines and other machinery for the said board of water-works commissioners.

Plaintiff's claim is, that the contract entered into between the said commissioners and the said Lane & Bodley Company is invalid for the following reasons, to-wit:

1st. Because the said commissioners prepared no plans or drawings for the work to be done under the contract.

2nd. Because the specifications of said commissioners are too general and are incomplete in not setting forth with definiteness the particulars of the work required under the contract.

3rd. Because the specifications of the commissioners provide for, permit and invite alternative bidding.

4th. Because said contract provides for alternative compliance with material items of construction to be made by the contractor.

5th. Because said contract, and the specifications of the commissioners, delegate power to bidders to furnish material supplementary specifications, which should have been made by said commissioners before the advertisement for bids.

6th. Because said contract delegates the power to the chief engineer of the commissioners to finally determine as to the indefinite and alternative specifications.

7th. Because said contract provides for work to be done of a material character and at a great expense which was not provided for or contemplated in the specifications of the commissioners, and said contract is void to that extent as excluding competition.

8th. Because certain alterations and modifications of the contract are proposed to be made, rendering it void to that extent, as beyond the power of the commissioners to order.

9th. Because the fourth engine and the electric crane were not named in the advertisement for bids, and the contract is void to that extent as excluding competition, and prays for an injunction against the city from carrying out the contract made with the Lane & Bodley Company.

The answer of the defendants admits the making of the contract, as alleged in the petition, and sets forth in detail the manner and mode in which said contract was finally entered into by said board and said Lane & Bodley Company, and claims that said board of commissioners has complied in every respect with the law under which they were created; that their said action in respect to said contract is in every respect valid, and that said contract should be sustained.

To this answer, the plaintiff has filed a reply denying new material allegations contained therein, to which defendant has filed a demurrer, and also a motion to strike out that portion of the petition relating to alterations.

The part of the act under which the plaintiff claims he is entitled to relief relates principally to the paragraph of section 7, of 2435 Revised Statutes, to-wit: "The said commissioners shall, before entering into any contract, cause plans, specifications, detailed drawings, forms of bid to be prepared, and careful estimates of cost to be made, and when adopted by them they may. in their discretion, cause the plans and drawings to be multiplied and printed by photographing, lithographing or other suitable process, and the specifications, forms of bids, contracts and bonds to be prepared and have the same printed for distribution among the bidders."

Taking up the first objection which the plaintiff has to the contract, and by reason of which he claims the contract to be invalid, to-wit: That the said commissioners prepared no plans

and no drawings for the work under the contract, we find attached to the answer of the defendants, as exhibits, certain plans and specifications relating to the subject matter, and the contention seems to be, whether these are plans and specifications, and whether they are sufficient in law. The first claim, however, is made by plaintiff that said commissioners prepared no plans and no drawings for work to be done under the contract. The pleadings show that the commissioners did prepare what they considered certain plans and specifications for the pumping engines in question; that in accordance with these plans and specifications they advertised, as the law required, for sealed proposals, at the same time recommending and requesting that bidders submit specifications of their own.

This, therefore, brings us to a consideration of the meaning of certain words used. A plan is a draft or form or representation of a horizontal section of anything, as of a building or machinery. Its synonyms are draft, delineation, sketch, design.

A drawing is a representation on a plain surface by means of lines and shades. Its synonyms are delineation, picture. The term synonomous is applied to a word that has the same import or signification with another. Accordingly, such words as are synonyms agree in expressing one principal idea.

Exhibit "A" attached to defendant's answer is a diagram of a pump pit, showing a longitudinal section and cross section from the intake pier in the Ohio river, with elevations of force mains and basins. It is a scale drawing as well as a plan.

Taking up the statute relating to plans we find "that said commissioners shall, before entering into any contract, cause plans and specifications, detailed drawings and forms of bids to be prepared." This language, therefore, directs the making of plans, but in doing this it must leave to the commissioners what plans and specifications shall be prepared. If this be so, and the commissioners have caused plans to be prepared, as they in their

best judgment believe subserve them best, then said commissioners of water-works are the judges of the sufficiency of the plans. It is evident that there is but one body that can determine this question, and that is the board of water-works commissioners, and such plans as they may adopt, and particularly in this case, where they have adopted a plan before the making of the contract sufficiently definite to those engaged in the kind of work or business with regard to which such plan was drawn, then it seems, that because others who may not be versed in the construction of such work as those plans call for, and because, by reason thereof such plans appear indefinite and incomplete, that therefore, it cannot be claimed that the commissioners have failed in preparing plans provided by the statute. However meager such plans may appear to one unaccustomed to such matters, notwithstanding this, if they convey to the bidder sufficient knowledge upon which to base a definite bid for the work to be done, then the terms of the statute would be complied with, and, as far as plans are concerned, the court is of opinion that the commissioners did adopt sufficient plans.

The second part of the first objection of plaintiff is, that there were no drawings prepared by the commissioners for the work to be done under the contract. So far as this objection is concerned, it might be said that what is applicable to the plans might be applicable to the drawings also, for the reason that, in the opinion of the court, a drawing is synonymous with a plan. They are both delineations; but if this is not correct, and by reason of the mandatory language of the statute, to-wit: "That said commissioners shall cause to be prepared detailed drawings of the work to be done," the court is of opinion that this language is only applicable to such work as to which it would be proper to have detailed drawings.

In the case of Campbell v. Cincinnati, 49 Ohio St., 463, the court uses this language: "It would be difficult to lay down any general rule as to when the provisions of a statute are merely directory, and when mandatory or imperative." It is evident, therefore, that the supreme court recognizes the fact, that a case might arise under a statute whose language was mandatory in which it might be impossible or impracticable to carry out the mandatory provisions of the act in accordance with the strict letter of the statute. Therefore, it would seem as though when the statute says, the commissioners shall cause to be prepared the detailed drawings of the work to be done, it must mean that detailed drawings are to be prepared upon work where the preparation of such detailed drawings would be in every way practicable. We must not lose sight of the fact that in the construction of a water-work's plant for the city of Cincinnati there is a multitude of various kinds of work to be done. If a building is to be constructed—for instance a building covering these pumping engines after their erection, then the mandatory language of the statute could be enforced as applicable to that kind of work to be done, and plans, specifications and detailed drawings in regard to the erection of that building could and should be prepared, for two reasons: One because it is mandatory in the act, and second, because it is practicable and possible to do so. When, however, you come to the construction of pumping-engines of the magnitude of those in the contract, which it must at once be recognized is not an ordinary piece of merchandise, but which, after construction, has certain work itself to perform, and in the construction and building of which the highest skill must be used, then to undertake to construct these pumping-engines under the same rules as the ordinary building would be entirely impracticable, and so far as the city of Cincinnati is concerned, very disastrous; therefore, in the opinion of the court, the statute did not contemplate that a picture of a certain engine should be drawn, as a picture of a building to be erected could and should be drawn, and therefore that a drawing as used in the statute would not be applicable

to a contract for the construction of such work as pumping-engines.

Second: Plaintiff complains that the specifications of said commissicners are too general, and are incomplete in not setting forth with definiteness the particulars of the work required under the contract.

With regard to this objection of the plaintiff, we must consider what the specifications are and the work that is required under the contract. The work under the contract is to build for the city of Cincinnati, three pumping-engines, with the option of the city to take a fourth, each engine capable of pumping 30,000,000 (U. S.) gallons of water in every 24 hours. The specifications set out in exhibit "B" of the answer of the defendants describe in a general way the kind of engines desired, their capacity each 24 hours, the speed of the piston, the length of the stroke, the material and workmanship, the quality of the material, the kind of steel, the kind of iron, how the riveted work shall be made, and how same shall be set etc., together with numerous other items set out in said specifications. Specifications in a building contract mean designation of particulars. What has been said with regard to the first objection of plaintiff might also be said with regard to this objection, and that is, that the commissioners being authorized to do a certain thing, and having set out the particulars of the work which they wished done with sufficient definiteness for such persons as are versed in the work asked to be done, to understand what the work is, then the fact that such specifications seem to others, who may not understand such matters, to be too general and incomplete, is no reason in law why the specifications should be declared by the court to be too general and incomplete by reason of being too indefinite. The fact that the Lane and Bodley Company in this case have bid intelligently upon the plans and specifications submitted by the board of commissioners, the fact that several pump-works also submitted intelligent bids upon these plans and specifications, notwithstanding the fact they submitted with their bids more definite plans in the sense of detail, tends to show that to such persons whc would bid, and to such people whc alone could bid, and who alone could do such work as build pumping-engines of the magnitude of these, the specifications were not too general and not so incomplete, and not so indefinite in the particulars of the work required but that they could make an intelligent bid, and did make such bids upon this class of work, under the specifications submitted by the board of commissioners, and the court is therefore of opinion that this objection is not well taken.

Third: Plaintiff also objects to the contract because the specifications of the commissioners provide for, permit and invite alternative bidding; and fourth, because said contract provides for alternative compliance with material items of construction to be made by the contractor.

With regard to these the court can see no objection to inviting bids for certain kinds of work in a certain event and for a certain kind of work in another event. So long as the work to be done under the circumstances and surroundings, under which that work is to be done, is understood and fully known by both parties, then there can be no objection to alternative bidding. In such case the bidder can still bid upon the specific thing to be done or to be preformed, and the board of water-works commissioners can adopt whichever system or plan it thinks best.

The decision of Judge Rufus B. Smith in the 41 Bulletin, 93, seems to turn upon the uncertain quantity of work to be done; that is, that the quantity of work to be done must be definitely stated so that everybody might bid on an equality. In the case at bar, bids were received on one or more definite propositions, and therefore on the question of alternative bidding, as raised by the petition of plaintiff, the court does not see, in law, under this statute, that there can be any objection to such bidding, where the propositions are definitely understood. The same may be said

with regard to alternative compliance with material items of construction. If these items are each definitely understood, in themselves, then, as in this case, it is possible to have a compliance on the part of the contractor with a definite, material item of construction.

Fifth: The fifth objection raised by plaintiff to the validity of the contract is, that said contract and specifications of the commissioners delegate power to the bidders to furnish material supplementary specifications which should have been made by said commissioners before the advertisement for bids. In this regard, referring back to the first and second objection of plaintiff to this contract, and which the court has heretofore found not well taken, it will be seen that sufficiently definite plans and specifications were submitted to the various pumping-engine builders throughout the country; that upon these plans and specifications these various bidders submitted drawings, plans and specifications of their own individual type of engine to the commissioners. The distinction that the court would make between the specifications submitted by the commissioners to the bidders and those furnished as supplementary by the bidders to the commissioners is this: That the commissioners having called upon the bidders for bids in accordance with their own plans and specifications, those plans and specifications being definite enough for them to understand upon what they were bidding, the bidder simply as a matter of further explanation and their own interpretation of these plans and specifications, submit to the board supplementary specifications in regard to the type of engine which they propose to build in accordance with the plans and specifications submitted by the commissioners. The bidder under such circumstances, is only carrying out in detail what the commissioners have generally informed him in advance was to be done, as was done in the case of Jenny v. The City of Desmoines, 103 Iowa, 347. In that case the court held that the mere fact that each bidder was to submit a full detailed plan, though bidding according to the city's plan and specifications, did not render bids non-competitive, since the detailed plans furnished by bidders were to advise the city of the interpretation of its own plans and specifications by the bidders, and their method of execution.

Sixth: The sixth objection to the validity of the contract is because said contract delegates power to the chief engineer of the commissioners to finally determine as to indefinite and alternative specifications.

The law requiring the appointment or employment of engineers is found in section 2437, section 7, paragraph 1, which is as follows: "Said commissioners shall have power and authority and be governed in respect to the contract as follows: to make contracts, employ such superintendents, engineers, clerks, laborers and other employes as they may deem necessary, and to fix their compensation, and any of such persons may be removed by a majority of said commissioners at any time."

This section, therefore, gives to the commissioners power to employ engineers. The law, therefore, contemplates the employment of engineers by the board of commissioners for the purpose of advising and consulting with the board as to the means, methods and plans to be adopted for the building of the water-works. In other words, it was in the mind of the legislature, that in the natural course of events, the board itself, either collectively or as individuals, might not be versed in the actual knowledge and experience necessary for the erection and completion of the water-works, and provided as a means of enabling them to arrive at what might be desired or might be the best to be done in the construction of the water-work's plant, that they should have a right to employ engineers.

This being so, the fact that certain matters are left to the determination of the engineers is not a delegation of power by the water-works commissioners to such engineers. The legislature

evidently recognized the fact that it would be necessary for the board of water-works commissioners to have skilful, scientific men in their employ, and when they included in the act the power to employ such skilled engineers, then it was for the purpose of enabling the commissioners to act and rely upon the experience, skill and knowledge of such engineers; and if, as in this case, certain things are left to the determination of the engineers, it seems to the court that the commissioners would have a right to so provide, for the reason that the evident intention of the legislature was for the commissioners to take just such action. The engineers are the employes of the board, and it cannot be claimed that such acts on the part of the engineers is a delegation of power by the water-works commissioners to such engineers.

Seventh: The seventh objection by reason of which plaintiff claims the contract invalid is, because said contract provides for work to be done of a material character, and at a great expense, which was not provided for or contemplated in the specifications of the commissioners, and said contract is void to that extent as excluding competition.

This objection is based upon the fact that at the time the Lane and Bodley Company, the successful bidder in this case, submitted its type of engine, plans, specifications, etc., to the board of water-works commissioners, together with the price for which they would erect such pumps, and which price and bid was, in the opinion of the commissioners, the lowest and best bid submitted, and was accepted by said commissioners, the Lane and Bodley Company also tendered with their bid the erection and completion of certain work outside of the construction of the pumping-engines, for which they said they would charge nothing; and plaintiff claims that these extras are as a bait to the commissioners to award them this bid. It must be remembered in this particular that the bid of the Lane and Bodley Company for the erection and completion of these

engines was the lowest and best bid. The extra articles to be furnished outside of the bid of the Lane and Bodley Company do not enhance its bid nor diminish it. Therefore, the situation presented is, that of a bidder contracting to do the work specified for a certain sum, which sum is the lowest and best of all the bidders, and tendering to the city extra work not included in the bid, and for which the city did not advertise or submit plans and specifications. The court cannot see the force of plaintiff's argument, that by reason of this the contract is invalid. There can be no objection if a party contracts for a certain sum to deliver a certain article, and then in addition to that tenders or offers to give, and does give something additional, which was not asked for, it is true, but which is tendered and given without any extra expense or cost. This would not make such a contract invalid. The board of commissioners of water-works would have had the right to have declined to receive this extra work without paying for it, but if the contractor sees fit to tender to the city of Cincinnati or its board of water-works commissioners, material work for which it asks no compensation, the court can see no reason or objection why the city of Cincinnati or the board of water-works commissioners, if they see fit, should not accept the same, and by so doing not invalidate the contract entered into, particularly when the fact is, that the bid of the Lane and Bodley Company for the work to be done is in all respects the lowest and best bid. If the contracting company sees fit to do more than they contract for without charges, the court can see no valid reason to avoid the contract on this account.

Eighth: The eighth objection raised by plaintiff is because certain alterations and modifications of the contract are proposed to be made which will be void to that extent, as beyond the power of the commissioners to order.

It is admitted under the pleadings, that after the contract was entered into between the commissioners and the

[COPYRIGHT, 1899, BY CARL G. JAHN.]

Lane and Bodley Company, certain alterations or modifications are about to be made with regard to certain parts of the pumping engines, as, for instance, the contract called for iron shafts, and the commissioners are about to enter into a contract to alter and modify it in that particular, so as to provide that the shafts should be made of steel, and that the four engines are to be self-contained instead of each being itself self-contained.

A modification is a change or an alteration which introduces new elements into the details or cancels some of them, but leaves the general purpose and effect of the subject matter intact. It is such change in a contract as leaves the original thing in operation, so far as its general purpose and effect are concerned. It must not make any substantially new engagement from the old one. Therefore, so long as the modifications are made as provided by law, and the changes thus entered into do not substantially affect the general purpose and operation of the old contract, then such modification could be made and would be lawful. In this case the court is of the opinion that the modifications and alterations contemplated do not change the general purpose and effect of the original contract, and such modifications or alterations as the petition sets forth the commissioners are about to enter upon, it seems to the court can lawfully remain, whenever it becomes necessary in the opinion of the commissioners in the progress of their work to make such alterations or modifications in the contract.

Ninth: The ninth objection that the plaintiff raises is, that the fourth engine, and the electric crane were not named in the advertisement for bids, and that the contract is void as excluding fair competition.

The advertisement made by the board of water-works commissioners says, that sealed proposals will be received for the construction, delivery and erection of three self-contained, vertical expansion crank and fly wheel pumping engines each of 30,000,000

(U. S.) gallons capacity in 24 hours, and boilers adequate in capacity for the operation of the three engines in accordance with plans and specifications on file in the office of the chief engineer of the commissioners of water-works. Copies of the specifications, forms of proposal, forms of bonds and form of contract can be procured by application to the chief engineer. The advertisement refers to the plans and specifications on file in the office of the chief engineer of the commissioners of water-works. Upon an examination of the plans and specifications referred to, it provides that the board of water-works commissioners shall have the option of one additional engine as specified in the contractor's proposal, with its complement of boilers and other appurtenances complete in every respect, and exactly similar to those covered by said contractor's proposal, the same to be furnished, delivered and erected by said contractor and completed at the same time as the three engines mentioned before, and accepting all the conditions and provisions of the contract; that the commissioners shall have the right to exercise this option within one year from the date of the contract upon giving said contractor notice of their intention so to do, and should said commissioners fail to give said notice within one year from the date of this contract, then their right to exercise this option shall become null and void and of no effect. It also provides for the construction and delivery of an electric crane.

It is true that the fourth engine, the option of selecting which is retained by the commissioners, is not in the advertisement in the newspaper, nor the electric crane; but nevertheless, upon reading the advertisement, the contractor or bidder looks then to the specifications submitted by the board of water-works commissioners. In these specifications he finds that the city reserves the option for a fourth engine, and also asks for the building of an electric crane. Acting in good faith, the bidder concluding at what price he might build three en-

gines by themselves or four engines, including also the electric crane, calculates accurately with the object in view of securing the contract. With this object in view, in the hope that he may be the lowest and best bidder, that is, the successful bidder, he makes his bid on the basis of four engines, believing that if his bid for the three engines is the lowest bid and the best bid, if the city exercises its option for a fourth engine, and he thereby has four engines to build instead of three, he can afford to make a lower bid than he otherwise would.

If no reference had been made in the notice to the plans and specifications on file, it is evident that the commissioners would have had no jurisdiction to enter into the contract. In the case of Clinton v. The City of Portland, 26 Ore., 410, the case of City of Sterling v. Galt, 117 Ill., cited by plaintiff is mentioned, and the court says: "The weight of authority is in favor of the maxim, that that is certain which can be rendered certain, and that if a notice describing generally the kind of improvement proposed to be made refers for a specific description to the maps, plans and specifications or other details of such improvements on file in the public office, and accessible to interested parties, they thereby render the description complete and it becomes a part of such notice."

In this regard, therefore, the specifications are a part of the advertisement to which the bidder's attention has been called, and upon consulting the specifications, each and all of the bidders know just exactly upon what their bids are solicited, and what is applicable to the fourth engine is also applicable to the electric crane. Stone v. Cambridge, 60 Mass., 270; Becker v. Washington, 94 Mo., 375.

In the construction of this statute there is one important feature which all parties and the court should not lose sight of, and that is, the object to be attained by the law in question.

Statutes must be interpreted according to the intent and meaning, not always according to the letter. It was the evident intention of the legisla-

ture to give to the city of Cincinnati a new and complete water-works system. It was their intention that the construction of this system should be accomplished as speedily as possible. It did not intend that the commissioners for whose appointment it provided should be individually experienced in every detail in every department of the work. All that was expected and intended by the legislature was that the commissioners should exercise the ordinary good business sense of pratical men. In the opinion of the court therefore, notwithstanding that the language of the statute is in its nature mandatory, nevertheless there is vested in the commissioners certain discretion as to carrying out of the plans proposed, providing that discretion was not abused, and that they acted in good faith.

In this case there is no claim on the part of the plaintiff, but rather there is a disclaimer by him in favor of the commissioners that everything the commissioners have done, has been done with the utmost good faith, and has been done to the best interests of the city of Cincinnati, and that the plans adopted by the commissioners, in every respect inure to her highest good.

Plaintiff stands alone upon his naked, technical construction of the statute, claiming that the commissioners have not followed the statute to the letter in undertaking the work which they have contracted for, and that the remedy to be had is by appeal to the legislature for an amendment of the law, giving the commissioner more discretion and more power than he claims they have under the statute.

In the light of the pleadings, and what they set forth, this court can not undertake to construe the law otherwise than it has.

For the reasons stated herein the demurrer will be sustained, and the injunction denied.

W. M. Ampt, for Plaintiff.

Ellis G. Kinkead, Corporation Counsel.

J. B. Frenkel and Thomas McDougall, for Defendants.

February 23, 1899.