THE PARKER-WASHINGTON COMPANY, a Corporation, Respondent, v. ANNA CAMP FIELD, Appellant.

Kansas City Court of Appeals, June 16, 1919.

1. **SPECIAL TAX BILL: Validity of Ordinance.** The provision in a city charter that no ordinance shall be deemed passed by either house "until it is signed by the presiding officer" is satisfied by the signature of the *pro tempore* speaker, presiding at the time, having been called to the chair by the regular speaker even though there is no provision·in the charter for the office of pro tempore speaker.

2. **SEWER DISTRICT:** Validity of creating ordinance: Adjourned Meeting. Where an ordinance provides that the Board of Aldermen might adjourn meetings from time to time as they desired, the attendance of seven of the eight aldermen at a meeting on February 22nd, adjourned to that date by the board, there being no quorum present on February 18, indicates that the latter time of meeting was "desired" by the board and the proceedings had at such meeting were valid.

3. **DISINCORPORATION OF TOWN:** Adopted by New· Municipality. When the town of Westport ceased to exist the sewer districts, previously created by it remained in existence and by the passage of an ordinance constructing sewers in "District No. 3" Kan-City adopted said district as established by Westport.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas,* Judge.

AFFIRMED.

*Ball & Ryland* for respondent.

*Johnson & Lucas,* and *R. H. Field* for appellant.

TRIMBLE, J.—This action is to enforce a special tax bill for $28.40 issued in part payment of a "joint district sewer" constructed under an ordinance of Kansas City, known as Ordinance No. 30,787, approved

October 31, 1905. Said taxbill is against Lot 5, Block 45, Hyde Park in said city, of which the defendant is the owner. Petition and tax bill are in the usual form, and their sufficiency to create a prima-facie case for plaintiff is not questioned.

The answer was a general denial. A jury was waived, the cause was tried by the court and a judgment was rendered sustaining the tax bill and enforcing same against the property described therein. From this judgment the defendant has appealed.

The first objection raised against the tax bill, and the one upon which the greater portion of appellant's brief is expended, relates to the validity of the ordinance in its passage through the Lower House of the City Council. The ordinance was in due and proper form; the president and secretary of the Board of Public Works certified thereon that the Joint Sewer District established and the sewers proposed to be constructed therein conform to the system of sewers established by the Board of Public Works and that said Board approved the ordinance. Said ordinance also showed that it passed the Lower House of the Common Council October 23, 1905, that it passed the Upper House on October 30, 1905, and bore the approval and signature of the Mayor October 31, 1905, and was attested by the city clerk with the seal of the city thereto affixed. Its passage through the lower and upper houses was shown upon the ordinance in this manner: "Passed Oct. 23, 1905, D. R. Spalding, *Pro Tem* Speaker Lower House of the Common Council" "Passed Oct. 30, 1905, H. M. Beardsley President Upper House of the Common Council." The journal of the proceedings of the Lower House on October 23, 1905, shows that all of the members were present but two, that the ordinance in question was passed, all the members present voting "aye." The point relied upon by appellant is that the ordinance was not signed by the Speaker of the Lower House but by Spalding as *"pro tem* speaker." The city charter provides that the lower house shall choose one of its own members to

preside over its deliberations who shall be known as speaker. Homer Mann was at this time the regularly chosen speaker and Spalding was a member of said house. It seems that when the meeting first began, Mann was in the chair, but later in the meeting the record recites: "Alderman Spalding in the chair." Just why this was done is not disclosed; but it appears that it was customary for the presiding officer to call a member from the floor to the chair if for any reason he wished to step out or leave the stand. That was a common and ordinary occurrence, and such member so called from the floor to the chair sat as Speaker *pro tem* and was regarded, while in the chair, as Speaker *pro tem* even though the regular speaker remained in the room. This was done a great many times and had been the practice for years, and it had always been the recognized custom of the house that whoever was in the chair was the recognized speaker of the house. The member in the chair as speaker *pro tem* would sign the ordinances that were passed while he was in the chair, and the regular speaker would sign those ordinances that went through while he was in the chair, this occurring frequently on the same night or at the same meeting. For some reason during the meeting in question here the regular speaker, Mann, called Alderman Spalding to the chair, and the evidence discloses that during the transaction of the business done with Spalding in the chair Mann was present in the room and voted for all ordinances that were passed, including the ordinance involved herein. Appellant claims the ordinance never passed the lower house because the charter provides that an ordinance is not deemed passed by either house "until it is signed by the presiding officer." The charter also provides that the presiding officer shall sign it in open session and the clerk shall at once transmit the ordinance to the other house and if it be passed by such other house without amendment it shall be signed by the presiding officer and presented to the mayor. The purpose of the presiding officer's

11—Mo. App.

signature is to furnish the mayor with evidence of the fact that the ordinance had passed the house. The charter nowhere says the regularly elected speaker shall sign all ordinances whether he was presiding or not, nor does it say no ordinance shall be valid unless it bears the signature of the regular speaker. Mann was the regularly chosen speaker for a term of two years during which term this ordinance was passed but he was not the officer presiding when the ordinance was passed. Spalding was presiding then and he certified to its passage, the entire legislative authority of the city recognized it, the ordinance was approved by the Mayor and authenticated under the hand and official seal of the city clerk, the work was done under it, was received and approved, and now when the contractor is seeking to obtain his money, it is urged that because the ordinance does not bear the signature of the regular speaker, it should be regarded as never having passed the house and the whole proceeding should be declared null and void. Of course, if the ordinance lacked the support of passage through one of the necessary legislative branches, then no doubt it would not be become an ordinance, and those who build rights thereon and attempt to assert them must take notice of such absence of legislative sanction. But it seems to us that there is a distinction between acts done by an officer which are required to show that one of the legislative branches has passed on the matter and acts which are necessary to be done by a certain duly elected and qualified officer in order to constitute legislative or law making action on his part. For instance, the signature of the one presiding over one of the branches of the city Legislature is necessary to show that the bill passed, but the signature of the regular Mayor showing his approval is necessary before the bill can become an ordinance since he and he alone is one of the legislative branches to whom is committed the power of saying whether a bill shall or shall not become a law. [Becker v. City of Washington, 94 Mo. 375, 381.] Of course, we do not mean to say

that if a bill were not signed by any presiding officer of the house the omission would not be fatal, but that is not the case here. In this case the one presiding was a member of the house and was presiding.

In this case, the ordinance is in due form, is certified by the speaker *pro tem,* then in the chair, as having passed the house; it did pass the house went to the other house and passed there, went to the Mayor, was signed and approved by him and authenticated by the seal of the city and the signature of the city clerk. To hold that the contractor doing work under an ordinance thus supported and authenticated, must lose his work and the whole thing be declared void, would, we think, be a narrow and harsh rule. [Porter v. Boyd Paving and Construction Co., 214 Mo. 1, 14.] We do not think the ordinance was rendered void, since the charter does not so provide. [State ex rel. v. Wilder, 211 Mo. 305, 317; City of St. Louis v. Foster, 52 Mo. 513, 515.] [See, also, Newcombe v. Kramer, 189 Mo. App. 538, 541; Pacific Railroad v. The Governor, 23 Mo. 353, 364; City of Tarkio v. Cook, 120 Mo. 1, 8.] Again the principle of the validity of the acts of a *de facto* officer should, we think, apply here. [Adams v. Lindell, 6 Mo. App. 197, affirmed by the Supreme Court in 72 Mo. 198.] The contention that there can be no *de facto* officer when there is no office does not apply here since the office, the place or function filled by the one presiding over the deliberations of the body, was in existence and was filled by the member of the house acting as such. That the ordinance cannot be thus collaterally impeached see Wilson v. Kimmel, 109 Mo. 260, 263; Verdin v. City of St. Louis, 131 Mo. 26, 118.

The appellant's property is in Sewer District 3. This district was created by the city of Westport when it was a separate municipality. In December, 1897, Kansas City, under authority of a statute and its ordinance (Sec. 1880, R. S. 1889, amended Laws 1895, pp. 54-55 and Ordinance No. 8962, City Charter 1898, p. 6, Note b.), extended its limits and absorbed Westport and

the extension authority -provided that "upon such exten-
sion being made, the corporate existence of such incor-
porated city, town or village, so included in such exten-
sion, shall *ipso facto* cease." The ordinance which au-
thorized the creation of the joint sewer district and the
construction of the joint sewer therein and under which
the work was done and the tax bill issued, united several
districts into a joint sewer district referring to them by
number, and among these was Sewer Districts 1, 2, 3,
etc. It is contended by appellant that Sewer District
3, being created only by Westport ordinance, ceased to
exist when that municipality became merged into Kan-
sas City, and that until District 3 had been established
by ordinance of Kansas City, the latter city could not
unite it with others into a joint sewer district. The
claim is further made that the ordinance of Westport
creating District 3 was not passed at a valid meeting.

Because the corporate existence of Westport ceased
did not destroy the things the municipality had thereto-
fore created. On March 17, 1899, Kansas City by or-
dinance established and caused to be constructed sewers
in District No. 3 and thereby adopted said district as
established by Westport. It also recognized said dis-
trict 3 in the ordinance which is the foundation of the
tax bill herein involved. We think the contentions of
appellant in this regard were disapproved in Barber
Asphalt Paving Co. v. Field, 134 Mo. App. 663, and in
Barber Asphalt Paving Co. v. Hayward, 248 Mo. 280.

The contention that the city of Westport did not
validly create the District No. 3 is based upon the
following: The journal of the proceedings of the Board
of Alderman of the city of Westport show that the
Board met in regular monthly session on February 4,
1895. Five of the eight aldermen were present and the
Board adjourned to meet February 18, 1895. On that date
the Mayor and four of the eight aldermen met and the
record shows that "there being no quorum the board,
on motion, adjourned to February 22, 1895." At this
meeting, when the ordinance was passed in due and

regular form, the Mayor, Marshal, Clerk, and seven of the eight aldermen were present and all seven of them voted for the bill. It was approved by the Mayor and became an ordinance, and was acted upon and treated as such. The ground of appellant's objection is that the aldermen at the meeting of February 18, being less than a quorum, had no authority to adjourn over to the future date, and that even though all of the aldermen except one were present, on said future date, thereby evincing their desire to hold the adjourned meeting at that time, nevertheless, the meeting was illegal and all business transacted thereat was null and void. At this time there was an ordinance in force which provided that regular meetings should be held on the first Tuesday of each month and that there might be such adjourned meeting or meetings from time to time of any regular meeting as may be desired by the Board of Aldermen.'' It is true, a later ordinance fixed the date of regular meetings on the first Monday of each month but it did nothing else and made no other change, nor did it repeal any provisions concerning adjourned meetings. We do not think the rights of plaintiff should be sacrificed upon the point of such a sharp technicality. Whether the Mayor and four aldermen, being less than a quorum, had to have *explicit* legislative authority to adjourn to a future date before they could validly do so, it would seem that the Board of Aldermen ''desired'' to hold the adjourned meeting on that date since they were present and all present voted for the ordinance.

The tax bill is said to be invalid because the evidence shows that a part of the joint sewer was constructed outside of the joint sewer district. We do not think the evidence shows this fact, certainly we cannot so say in view of the trial judge's judgment. The only basis for this claim is one answer given by the Assistant Engineer to the question as to what districts the sewer was constructed in. In naming over the districts he included 288. There is no evidence that at the time of the passage of the ordinance there was any district

288 in existence, and the engineer's answer does not say the sewer was outside the joint sewer district. No other mention of 288 is made anywhere in the evidence. For aught that appears, District 288, if it ever came into existence, was carved out of the territory constituting the joint sewer district. The burden was on defendant to show the invalidity of the bill, and before it should be declared invalid on this ground, the evidence that the sewer was built outside the district should be clearly and definitely shown.

No part of the joint sewer was constructed in District No. 3, but the evidence shows that all of the sewer districts in the joint sewer district drained into the joint sewer where the connections are made.

Being of the opinion that the tax bill should be upheld, the judgment of the trial court is affirmed. All concur.