STATE OF MISSOURI, at the relation of PUBLIC WATER SUPPLY DISTRICT No. 7, JACKSON COUNTY, MISSOURI, a Public Corporation, Relator, v. HONORABLE JOHN R. JAMES, as judge of the Independence Division of the Circuit Court of Jackson County, Missouri, Respondent, No. 42011—237 S. W. (2d) 113.

Court en Banc, January 8, 1951.

Rehearing Denied, March 12, 1951.

*V. E. Phillips* for relator.

*Charles C. Madison* and *Charles L. Madison* for respondent.

*James C. Davidson* amicus curiae.

[114] LEEDY, J.—This is an original proceeding to prohibit respondent, as Judge of the Circuit Court of Jackson County at Independence, from exercising further jurisdiction over a certain

intervening petition and motion (hereinafter more fully described) filed with leave of court by Beulah Ramsey and others as a class action in a proceeding instituted by relator, styled "In the Matter of Public Water Supply District No. 7, Jackson County, Missouri, for Approval of Contract and Change of Boundaries, No. 109855." A preliminary rule in prohibition issued, and for return thereto respondent filed his motion to dismiss on the ground that relator's petition for the writ fails to state a claim upon which relief can be granted. The legal effect of such a motion under our new Civil Code is the same as that of a demurrer under the former practice, so that the well pleaded facts in relator's petition for the writ are to be treated as confessed, and as constituting the facts of the case. For present purposes, the following outline of those facts will suffice: Relator, a public water supply district of Jackson County, was incorporated August 23, 1940, by the Circuit Court of Jackson County at Independence, under Art. 12, Chap. 79, R. S. '39, and Mo. R. S. A., § 12620 et seq. The district adjoined the City of Kansas City, a portion of the south limits of the latter having coincided with the north limits of the district so as to constitute a common boundary. It purchased water from the city at the city limits, and supplied same to the residents of the district. For brevity, we will continue to sometimes refer to relator as "the district," and to the City of Kansas City as "the city."

On January 1, 1947, a very considerable portion of the territory of the district became included within the corporate limits of the city by annexation through amendment of the city's charter. There-after, on April 6, 1948, the district, by a written agreement (captioned "Lease Agreement") entered into with the city, leased and contracted to sell to the city all that part of its water system located within the area so annexed (except its office building and certain other property not here involved). The term of such leasing was until May 1, 1961 (the last maturity date of the district's outstanding revenue bonds), and the agreed rental was at the rate of $350 per month to the district, at its offices, monthly in advance on the first day of each month. The contract, which was also to sell, fixed the purchase price at $40,000, plus the interest to accrue on all of the outstanding (special revenue) bonds [$4273.74] to their respective maturity dates, and provided that all sums paid by the city as rental (or in redemption of bonds) be applied and credited to such purchase price, "said sale to be effective when either of the two following conditions is satisfied: (1) when the sale is approved by final declaratory judgment decree of the Circuit Court of Jackson County; or (2) when the Missouri law has been amended to provide specific authority to a water district to sell and convey all or part of its properties by reason of the inclusion of district territory within the corporate limits of a city."

It was further provided that upon the occurrence of either of the foregoing conditions, the district would cause its bill of sale or other title conveyance to be deposited in escrow "to be held and delivered to the city upon payment of the purchase price, which purchase price shall be paid in any event on or before the termination of this lease on May 1, 1961." The city was given the option (at any time after such deposit of the title conveyance) to itself deposit funds sufficient to pay all outstanding bonds, interest, fiscal and escrow fees, and "such further sum as may be due the district on the purchase price of said property," and thereupon receive the conveyance and title.

Bonds aggregating $18,500 were outstanding as of the date of the contract, and these were revenue bonds. The contract was approved by an ordinance of, the city council on April 26, 1948. The city took possession May 1, 1948, and thereafter the 65th General Assembly passed an enabling act of the type contemplated. [115] by the contract. See H. B. 213, Laws 1949, p. 255 (§ 12637.1, R. S. '39, and Mo. R. S. A.). Such act became effective July 27, 1949, and on October 3, 1949, the district, purporting to act in pursuance of its provisions, instituted the proceeding mentioned in the first paragraph hereof to obtain approval of the contract, and to detach and exclude from the district that area included within the corporate limits of the city as extended. Meanwhile the district had used approximately the sum of $200 monthly out of the rentals paid it by the city for the purpose of providing water service in the remaining portion of the district not annexed to the city.

Intervening petitioners Beulah Ramsey and others are owners of lots and parcels of real estate located in the area now annexed. to the city. Adopting all of the allegations and prayer of the district's application in the above-mentioned proceeding, except as to the single matter of disbursement of the funds paid by the city under the contract, the intervening ‧petitioners, invoking particular provisions of the new enabling act presently to be noticed, and seeking a share of the net proceeds of the sale, prayed the appoint-. ment of a trustee to receive, manage, invest, reinvest and disburse all monies received from the city under the contract, and that upon an accounting, the district be required to account for and pay to the trustee all monies received by it as rental under the lease agreement, and that the "entire fund be disbursed and distributed to the parties entitled thereto under the law."

The district's application for approval of the contract and change of boundaries was heard November 26, 1949. At that hearing, the district, the city and the intervening petitioners severally appeared by their respective attorneys, and the respondent caused to be entered a decree, which, after expressly finding that "the contract provides

for the rendering of necessary water service in the territory embracing the district'':

(1) Fully sustained, approved and declared valid the contract of lease and sale;

(2) Directed the district to execute and deposit in escrow its bill of sale conveying the property to the city for delivery to the city upon payment of the sum of $44,723.74, less credits as provided in the contract;

(3) Permitted the city to avail itself of the installment payment provisions of the contract by directing it to deposit the sum of $350 monthly (or such less sum as the court by subsequent order might direct) to provide annually a sum sufficient to retire the district's outstanding special obligation bonds as the same matured, together with interest and fiscal fees;

(4) Adjudged that the ''contract and the provisions for payment thereunder fully protect the bondholders' rights and constitutes a firm commitment entered into by Kansas City, Missouri, a municipality, to pay in installments, or at its election in a lump sum, all unpaid special obligation bonds of the District in full, with interest thereon and fiscal fees'';

(5) Provided for the vesting in·the city of the absolute title to the property, free and clear of all encumbrances ''upon the performance by the city of all the terms of the contract and the delivery of the bill of sale,'' and for the retention of jurisdiction of the cause ''to make such final decree, and direct the payment of the net proceeds due under such contract, after payment of bonds, to the District, *or to such persons as may be determined by law to be entitled thereto*,'' and further reserved jurisdiction *to require an accounting by the district;*

(6) Changed the boundaries of the district by detaching and excluding therefrom that part of the territory lying within the corporate limits of the city as extended, redivided the remaining area into five subdistricts, and appointed a resident freeholder from eacn of said subdistricts as members of the board of directors;

(7) Directed that the clerk file a copy of the decree in the offices of the Recorder of Deeds, the County Clerk, and the Secretary of State; and

[116] (8) Assessed the costs against the district and ordered that the same be paid to the clerk.

Thereafter, on December 3, 1949, the intervening petitioners Beulah Ramsey and others filed their motion, heretofore mentioned, to enjoin the new board of directors, appointed under the foregoing decree, from disbursing any of the funds turned over to it by the

former board without an order of court, which funds were alleged to have aggregated approximately $7100. The grounds set forth in the motion are that under the law the court has jurisdiction of all of the assets of the water district that were owned before the new boundaries were defined; that the petitioners have an interest in and to said assets; that unless the court protects said assets there is a danger that the parties, including petitioners, who are entitled to said assets, may lose the same.

The district, after having unsuccessfully sought modification of the decree (so as to eliminate the italicized portion of (5) above), and to strike intervenors' motion to enjoin disbursements, instituted the present proceeding, asserting here the same propositions presented to respondent in the moves just mentioned. The first question is the interpretation to be given those differing provisions of the enabling act severally relied on by the parties in support of their respective positions, and so determine their applicability (or not) under the facts here involved; and, secondly, if those relied on by respondent are held applicable, then the further question of their constitutionality.

As will be seen, "Section A" of the enabling act (H. B. 213, Laws 1949, p. 255, § 12637.1, R. S. '39, and Mo. R. S. A.) provides that a designated article of R. S. '39, relating to public water supply districts, be amended "by adding thereto one new section to be known as Section 12637.1," etc. It will also be seen that such "one new section" consists of three separate (lower-case lettered) paragraphs or subsections, namely, (a), (b) and (c). Relator contends that its proceeding for the approval of the contract and for a change of boundaries was filed under (a) and (c) of the act, and that (b), upon which respondent relies, is inapplicable. Turning to the act, it will be found that under (a) it is provided that the board of directors of any public water supply district shall have the power to contract with any municipality which has annexed all or any part of the territory of such a district "for operating the water works system within such annexed area, or the board of directors may, subject to the provisions of this section, lease, contract to sell, sell or convey any or all of its water mains, plant or equipment located within such annexed area to such municipality;" requires that such contract shall provide for the detachment and exclusion from the district of that part located within the city's corporate limits; and makes provision, in case of sale or conveyance, for the protection of the bondholders by requiring all general obligation and revenue bonds (1) to be paid in full, or (2) a sum sufficient for that purpose be deposited with the fiscal agent named in such bonds, or (3) that the city shall have entered into a firm commitment to pay in a lump sum or installments a certain proportionate part thereof, "not less than that proportion of the

sum of all existing liquidated obligations and of all unpaid revenue bonds, with interest thereon to date, of such water supply district, as the assessed valuation of the real and personal property within the area annexed bears to the assessed valuation of all of the real and tangible personal property within the entire area of such district, according to the official county assessment of such property as of December 31 of the calendar year next preceding,'' after which it is provided that ''if the court finds that the agreement protects the bondholders' rights and provides for the rendering of necessary water service in the territory embracing the district, then such agreement shall be fully effective upon approval by the court.'' It further declares the effect of the decree with respect to vesting title and the power of the city to use and dispose of the property.

The procedure prescribed in (b) is, in terms, made applicable ''whenever any city [117] owning a water works or water supply system shall have extended or shall hereafter extend its corporate limits so as to include any part of the area in a public water supply district, and said city and the board of directors of such district *have been unable to agree upon a service, lease, or sale agreement, or are unable to proceed under paragraph (a) of this section*,'' etc. The steps here involved are quite different from those provided in (a). Here is required the filing of a petition to the circuit court to detach and exclude, the same to be signed by at least 25 owners of real estate within the district. If the court is satisfied as to the sufficiency of the petition, a special election to vote on the proposal to detach and exclude is held on call of the court, and the result is required to be promptly certified to it. It is then provided: ''Such court, acting as a court of equity, shall thereupon without delay enter a decree detaching and excluding the area in question located within the corporate limits of such city from said public water supply district; provided, however, that before such decree so detaching and excluding such area shall become final or effective, the said city shall show to the court it has assumed and agreed to pay in lump sum or in installments'' that proportion of all liquidated obligations and all unpaid revenue bonds specified in (3) of the options under (a) above set forth, ''and in addition thereto, such city shall have assumed and agreed to pay the court costs and costs of calling and holding such special election, or so much of all of the aforesaid amounts as such city may have agreed with such water supply district to assume and pay.'' Then follows the identical provision contained in (a) with respect to the effect of the decree as to vesting title in, and the power of the city to use and dispose of the property. Next follows a provision authorizing the renewal of the proposal (if defeated at one election) by the filing of another petition and resubmission at a subsequently called election, with a limitation upon the time of holding the latter.

This brings us to the last sentence of (b), constituting the provisions invoked by respondent to sustain his jurisdiction, and out of which the present controversy arises. These provisions are:

"Any and all sums paid out by such city under this section, other than the costs of the election, shall be administered by the circuit court for the benefit of bondholders, if any, *and the remainder of such sums, if any, shall be distributed upon a just and equitable basis by the court among and for the benefit of the persons owning the respective lots and parcels of real estate located within the water supply district as constituted at the date of .any contract with such city,* and the court may appoint a trustee to receive, manage, invest, reinvest, and disburse such moneys for such purpose."

The underscored words were inserted by amendment from the floor of the House in lieu of the words "and of the remainder of such water supply district located outside of the corporate limits of such city," as the latter appeared in H. C. S. for H. B. 213 (H. Jour., 1949, p. 883). In the view we take of the case, it becomes unnecessary to notice relator's contentions with reference to other phases of the history of the legislation. No contention arises with respect to (c), it being applicable to proceedings whether brought under (a) or (b).

The district's application for approval of the contract and the decree rendered thereon (except the challenged portion) conformed to the provisions and requirements of (a), but respondent contends that the particular provisions of (b) invoked by him are, nevertheless, applicable because "forming an integral part of the act, and just as binding as the other sections." The district's answer is that "the specific reference to 'other than the costs of the election' shows a legislative intent that the sums referred to for administration by the court are sums arising in a case in which there has been an election," and that the whole of (b) is premised on the inability of a city and a district to reach an agreement. Such position ignores the words "paid out *under this section*," and the further clause of the same sentence which provides for the distribution of the remainder, after payment to the [118] bondholders, to lot owners within the district "as constituted at the date of any contract with such city." Clearly "*any* contract with such city" is not limited to the assumption by the city of the district's indebtedness as previously required in (b) because in such instance there would be no "remainder" to be distributed to the lot owners. Consequently we think such provision applicable to proceedings under (a), as in the case at bar, as well as those under (b), and so overrule relator's contention respecting its nonapplicability.

A more serious question is presented by relator's attack upon the constitutionality of the matter introduced by the amendment to (b), i. e., that it violates § 38, Art. III, and § 25, Art. VI,

Constitution of Missouri, 1945, which respectively prohibit (with exceptions not here relevant) the general assembly, on the state level, and (among others) political corporations such as relator district (State ex rel. Halferty v. Kansas City Power & Light Co., 346 Mo. 1069, 145 S. W. (2d) 116), as units of local government, from granting public money or property to any private person, association or corporation.

The mere change of district boundaries by detaching the territory subsequently annexed to the city did not work a dissolution of the district, so we are not concerned with the application of § 12638, which provides the procedure on dissolution, and requires that the decree of dissolution "shall provide for the disposition of the property of the district." We fail to find any analogy between this provision and the situation here involved. The amendment did not change the original provisions of the bill touching priority in payment to bondholders, but it did substitute the lot owners (as constituted at a determinable time) in lieu of the district as beneficiaries or distributees entitled to the balance of the proceeds of the sale of the *district's* property. Respondent takes the position that this was permissible so "as to protect the owners of the equity in their tangible assets," and hence not within the restriction of the Constitution. Contrary to this contention, we hold the district's property to be public property within the meaning of the constitutional provisions here invoked, and proceeds arising from a sale thereof as constituting public money, and hence a distribution of such public money to lot owners as private individuals, as here involved, is clearly forbidden, and the act in question is, to this extent, invalid, and we so hold. Relator attacks the amendment on other constitutional grounds, but in view of our holding above, it becomes unnecessary to notice them. Still another such ground is urged in the brief of amicus curiae which we do not consider because applicable to an entirely different state of facts than presented in the proceeding before respondent, and whatever we might say in that connection would be obiter. The preliminary rule in prohibition should be made absolute, and it is so ordered. All concur.