**STATE ex rel. STERN BROTHERS & CO.,**
**Respondent,**

**v.**

**William H. STILLEY, Clifford E. Ossenford, Willis Pettigrew, Russell W. Elliott, Orville O. Gold, Constituting the Board of Directors of Public Water Supply District No. 2 of Jackson County, Missouri, Appellants.**

No. 47825.

Supreme Court of Missouri,

Division No. 2.

July 11, 1960.

Motion for Rehearing or to Modify Opinion and Judgment or to Transfer to Court en Banc Denied Sept. 12, 1960.

Richard A. Erickson, Charles V. Garnett, Kansas City, for appellants.

Ilus W. Davis, Hubert L. Rowlands, Carl D. Swanson, Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, for respondent.

STORCKMAN, Judge.

The object of this action for a writ of mandamus is to compel the directors of a county water supply district to deposit with the paying agent sufficient funds to pay the principal and interest due on general obligation bonds of the Water District held by the relator. On final hearing before the court without a jury the issues were found in favor of the relator and a peremptory writ of mandamus was issued. The directors' motion for new trial was overruled and they have appealed. The directors, who were the respondents below and are the appellants here, will sometimes be referred to as the directors and the relator as the bondholder.

In general, the directors contend that the Water District has been relieved of a proportionate share of its liability for the pay-

ment of the principal and interest of the bonds in suit because a part of the District, annexed by the City of Kansas City, was detached from the District pursuant to a decree of the circuit court in accordance with § 247.160, RSMo 1949, V.A.M.S. The directors further contend the bondholder is not entitled to the remedy of mandamus in any event. The evidence is largely documentary and not disputed in any material respect.

The appellants are the directors of Public Water Supply District No. 2 of Jackson County, Missouri, which was organized by a decree of the Circuit Court of Jackson County under §§ 247.010 through 247.220. On November 1, 1953, the Water District issued 175 general obligation bonds in the amount of $1,000 each with interest payable at the rate of 3 per cent per annum on bonds numbered 1 to 105 inclusive, and 3¼ per cent on bonds 106 to 175 inclusive. The Union National Bank in Kansas City is the designated agent for the payment of principal and interest of the bond issue. The relator, Stern Brothers & Co., is the holder of bonds numbered 29 through 35 and certain interest coupons which are due and payable. By the terms of these general obligation bonds, the Water District promised to pay the principal amount thereof with interest and pledged the full faith, credit and resources of the District and all of the taxable property situated therein for the prompt payment thereof. At maturity the bonds and interest coupons in question were presented to the Union National Bank and payment was refused because sufficient funds had not been deposited to pay the entire amount due. The paying agent did not have the necessary funds on deposit because of a controversy between the Water District and the City of Kansas City as to the amount each was obligated to contribute to the fund.

By successive extensions of its city limits in 1957 and 1958, Kansas City annexed a portion of the territory of the Water District. Thereafter, an application was filed in the Circuit Court of Jackson County for a decree approving a contract for the sale by the Water District of its property in the annexed area to Kansas City and for the detachment of such annexed area. By the terms of the contract, the Water District sold to Kansas City practically all of its property and equipment in the annexed area for the sum of $215,000 and the assumption by the City of certain liabilities of the District. On March 24, 1958, the circuit court entered its decree in the detachment case approving the contract and providing for the conveyance of the water distribution facilities to Kansas City. Based on the ratio that the assessed valuation of the real and tangible personal property within the annexed area bore to the assessed valuation of all the real and personal property within the entire area of the District, the court found that the portion of the bonded indebtedness of the District to be assessed and paid by the City pursuant to the contract was 34.674 per cent. The court further found the amount of credit the City was entitled to receive on the purchase price by reason of its assumption of 34.674 per cent of the bonded indebtednesss of the District was $38,590.35, and that the balance of the purchase price in the sum of $176,409.65 should be deposited in court and paid to the Water District upon delivery of deed of conveyance of the property sold to the City. With reference to the payment of the share of bonded indebtedness assumed by the City, Paragraph 5 of the decree provides:

"By reason of its contract as aforesaid, and the approval thereof by this Court as by law provided, the City is obligated to pay and has solemnly and firmly agreed to pay, in such installments as may be necessary to provide for the full and complete liquidation thereof, its portion, that is, 34.674 per cent, of the existing general obligation bonds of the District with interest thereon, as the same become due and payable, and the City shall make such installment payments from time to time as the same become due; provided, however, that the obligation of the City may, at its option, be satisfied by depositing with the Union

National Bank in Kansas City the full amount of the principal and interest for which the City is liable on account of said general obligation bonds to be held by said bank and applied to the retirement of said bonds, both principal and interest, as they mature; or, consent in writing may be obtained by the City from the holders of all of said bonds to such other form of payment as the City may desire to make."

On September 25, 1958, the City filed a motion to modify the decree by deleting Paragraph 5 and substituting a new paragraph providing in substance that the City was obligated to pay 25.5565 per cent of the principal and interest of all bonds outstanding and unpaid instead of 34.674 per cent. The City's motion to modify was heard and overruled on October 16, 1958. The reason for the City's position is not fully explained and is not essential to the issues here involved, but apparently the City has continued to insist that its obligation is the percentage of 25.5565 instead of 34.674 and has made its deposits accordingly. Because of this controversy, the funds deposited with the paying agent are inadequate and payment of the matured bonds and interest coupons has been refused.

■ In their return to the alternative writ of mandamus, the directors alleged that the writ ordering them to pay over to the Union National Bank, as paying agent for the District, sufficient funds to meet the principal and interest payments due was in violation of the provisions of § 25 of Art. VI, § 38(a) of Art. III, and §§ 1 and 3 of Art. X, of the Constitution of Missouri V.A.M.S. Since these constitutional questions have been preserved and presented in the directors' appellate brief, this court has jurisdiction of the appeal. Art. V, § 3, Constitution of Missouri 1945; State ex rel. Neu v. Waechter, 332 Mo. 574, 58 S.W. 2d 971, 975[6]; Katz Drug Co. v. Kavner, Mo., 249 S.W.2d 166, 167[1]. Additional constitutional questions presented by the bondholder need not be considered in this respect.

The appellant directors' basic contention is: "The Legal Effect of the Decree Detaching the Annexed Area from the Water District, Exempting That Detached Area from Further Taxation by the Water District, and Obligating the City to Pay Its Proportionate Share of the Bond Liability, Was to Relieve the Water District from, and Transfer to the City, Liability for the Payment of 34.674% of the Principal and Interest of the Bonds in Suit." Supplementary to this are the directors' contentions that the legislature had the power to enact the statutory provisions on which the directors rely and they are not unconstitutional; and that such statutory provisions are as much a part of the bond contract as if written into the bonds. Our conclusion that the statutes do not have the legal effect of relieving the Water District of its primary obligation to pay the whole amount of the principal and interest on the bonds renders unnecessary a decision of the subsidiary contentions. In support of their primary contention, the appellants cite § 247.160 and these cases: State ex rel. Consolidated School District No. 8 of Pemiscot County v. Smith, 343 Mo. 288, 121 S.W.2d 160; Pepin Tp. v. Sage, 8 Cir., 129 F. 657; Town of Mount Pleasant v. Beckwith, 100 U.S. 514, 25 L. Ed. 699; Stone v. City of Charlestown, 114 Mass. 214. All four are cases where school districts or other municipal corporations have been abolished entirely and the legislature has made provision for payment of existing liabilities by the successor or successors of the dissolved entity. The Water District is still in existence. See § 247.220 and State ex rel. Public Water Supply District No. 7, Jackson County v. James, 361 Mo. 814, 237 S.W.2d 113, 118. Further, the cases are not controlling or persuasive because of the differences in applicable statutes, particularly § 247.160.

Section 247.160 is not susceptible of the construction for which the directors contend. It permits a county water district a choice of several transactions with a municipality which has annexed a part of the

district's territory. It may contract with the municipality for the operation of the water works system within the annexed area, or the district may lease or sell any or all of its property and equipment within the annexed area to the municipality. If the parties are unable to agree upon a service, lease or sale agreement, § 247.170 provides a procedure for detachment under the supervision of the circuit court. In the present case, however, the District voluntarily agreed with the City for the sale of its property as specifically provided in § 247.160. In case of a sale, the statute requires that the rights of bondholders must be protected in one of four ways and the court must find that the sales contract gives such protection. Section 247.160 subds. 1(3) and 4. Briefly stated, the statutory methods are: (1) Such bonds must be paid in full, or (2) a sum sufficient to pay all such bonds and interest must be deposited with the fiscal agent named in the bonds, or (3) the city must enter "into a firm commitment to pay in lump sum or installments not less than that proportion of the sum of all existing liquidated obligations and of all unpaid revenue bonds, with interest thereon to date, of such public water supply district, as the assessed valuation of the real and tangible personal property within the area annexed bears to the assessed valuation of all the real and tangible personal property within the entire area of such district," or (4) consent in writing must be obtained from the holders of such bonds. A sale of the property in the annexed area with a commitment by the City to pay a "propor- tion of the sum" of the outstanding bonds in installments, as in (3) above, was the method agreed on by the parties and approved by the court.

Section 247.160 does not expressly or by implication relieve or release the Water District from its obligation to pay the matured bonds and interest coupons. Whether the bondholders have acquired a right to proceed directly against the City for payment of the portion of the obligation assumed by it and whether the real and tangible personal property in the detached area is relieved of further tax liability for payment of the bonds are issues that are not involved in this case and are not reached for decision. The narrow issue presented is whether the Water District is absolved.

■ The primary purpose of § 247.160 is to enable the District to transfer to the City the water distribution facilities in the annexed area under circumstances that will protect the rights of the holders of bonds of the Water District. It does not purport to disturb the contractual relations between the Water District and its bondholders. The statutory requirements that the bonds be paid in full, that a sum sufficient to pay them all be deposited, or that a firm commitment be entered into by the City are in furtherance of the protection of the bondholders, but the release of the Water District from its obligation would not be. These provisions for a deposit of the amount necessary to pay the bonds or a firm commitment by the City relate to the *source* of funds necessary for payment and have nothing to do with the contractual obligation to pay. Whether the general assembly intended the deposit or new commitment as a source of funds in substitution of the detached taxable property, or as security for the bonds in addition to other pledges, is not before us for decision.

There is no statutory authority for the release of the Water District and, without such authority, the contract of sale and the court's approval cannot accomplish that result. "It is not within the power of the original debtor to release himself from liability by contracting for the assumption of the debt by another. There can therefore be no doubt that in order to effect a novation by the substitution of a new debtor, the assent of the creditor to the substitution is essential." 39 Am.Jur., Novation, § 19, p. 264. See also Snyder v. Kirtley, 35 Mo. 423, 426, Manufacturers Bank & Trust Co. v. Buder, Mo.App., 191 S.W.2d 290, 293[1], and Shapiro v. Childs

Co., 222 Mo.App. 1126, 17 S.W.2d 677, 680[2].

The directors repeatedly assert that: "It is wrong to require two-thirds of the taxpayers to pay three-thirds of the bonds." This indicates a misconception of the purpose and intent of § 247.160, as well as a failure to recognize the accomplishments of the transaction. If the contract voluntarily entered into by the parties was a "fair exchange", then the District should be approximately as well off financially as it was before. It appears that the District sold the property and equipment in the annexed area for $215,000 and the assumption by the City of certain liabilities. The circuit court found that bonds in the sum of $151,000 were outstanding and unpaid and that the Water District had in its Sinking Fund the sum of $39,705.22 pledged for the payment of its bonded indebtedness, leaving $111,294.78 as the net principal amount of the bonded indebtedness to be apportioned between the City and the District as provided in the contract of the parties. The District received $176,409.65 in cash and the remainder of the purchase price, the sum of $38,590.35, was to be paid by the City in such installments as necessary to provide for the full and complete liquidation of the bonds with interest.

It must be assumed that the contract, presented by the parties and approved by the circuit court, is a fair one despite the directors' argument, quite outside the record, that the City drove a hard bargain. Nevertheless, if it were a fact that the contract is an improvident one, that would be but an added reason why its enforcement should not be foisted upon the bondholders but should rest upon those who negotiated it. The Water District was under no compulsion to enter into the contract. It could have proceeded under § 247.170 which covers situations in which the parties cannot agree and the terms of the detachment proceedings are arrived at under court supervision. In that event, however, the Water District would not have come into any part of the purchase price

until the claims of bondholders had been satisfied because § 247.170 subd. 1(9) as amended in 1957 provides: "Any and all sums paid out by the city under section 247.170 other than the costs of the election, *shall be administered by the circuit court for the benefit of the holders of the then existing and outstanding bonds of the district,* and the remainder of such sums, if any, shall be delivered to the district to be expended in the operation, maintenance and improvement of its water distribution system." Italics added. The legislature can hardly be said to have intended to treat the bondholders less favorably where the District and the City agreed on the sale and proceeded under § 247.160.

■ The basic rule of statutory construction is to first seek the legislative intention, and effectuate it if possible, and the law favors constructions which harmonize with reason, and which tend to avoid unjust, absurd, unreasonable or confiscatory results, or oppression. Owen v. Riffie, Mo., 323 S.W.2d 765, 769–770[2]. A holding relieving the Water District of its obligation would increase the difficulties of the bondholders manyfold and solve nothing. The problem of requiring the City to deposit its share in accordance with the contract and decree properly rests with the Water District. Even if the City were to prevail in its contention, the amount involved is only the difference between approximately one-fourth and one-third and not a total of one-third as the directors assert. But regardless of the result, it will be that for which the District contracted and the court approved.

■ Neither § 247.160, the sales contract, nor the decree of the circuit court has relieved the Water District of its primary obligation to pay the holders of the general obligation bonds, the principal and interest due thereon. See Borough of Pleasant Hills v. Jefferson Tp., 375 Pa. 431, 100 A. 2d 720; Town of Warwick v. Rhode Island Hospital Trust Co., 38 R.I. 517, 96 A. 508; Parker-Washington Co. v. Field, 202 Mo.

App. 159, 214 S.W. 402; McQuillan on Municipal Corporations, 3d Ed., Vol. 2, § 7.46; 17 C.J.S. Contracts § 519c(1), p. 1121. The case first cited above was an equitable proceeding to determine the property apportionment of assets and liabilities between a township and a borough which was incorporated from a part of the township. Although the rights of bondholders were not directly involved, the court made this observation: "It may not be amiss at this point to state the well established principle of law that, as far as the bondholders are concerned, their rights remain exactly the same as they were at the time the bonds were issued,—in other words, the township and the borough continue fully liable for the payment of the interest and principal of the bonds, which may therefore be recovered from either or both." 100 A.2d 723.

The constitutional questions presented by the appellants may be considered together. First they say that the writ of mandamus in requiring them to pay out of public funds in their hands the amount the City has failed to pay is in violation of § 25 of Art. VI forbidding a political corporation or subdivision of the state from lending its credit or granting public money or property to any private individual, association, or corporation, and is also in violation of § 38(a) of Art. III, which prohibits the general assembly from granting public money or property or lending or authorizing the lending of public credit to any private person, association or corporation. Further they assert that since the funds in their hands are public funds raised by taxation the writ violates § 1 of Art. X, limiting the taxing power to be exercised by political subdivisions to municipal or other corporate purposes, and also § 3 of the same article providing that taxes may be levied and collected for public purposes only. Thus the gist of these contentions is that the deposit of funds the directors are ordered to make under the terms of the writ are not for a public purpose because the total includes the portion of the debt covered by the City's commitment. The directors rely on these cases: State ex rel. Public Water Supply District No. 7, Jackson County v. James, 361 Mo. 814, 237 S.W.2d 113; State ex rel. Garth v. Switzler, 143 Mo. 287, 45 S.W. 245, 40 L. R.A. 280; and Kennedy v. City of Nevada, 222 Mo.App. 459, 281 S.W. 56. These cases declared unconstitutional projects or proposals which at their inception were beyond the realm of public purpose as contemplated by the constitution.[1] In the present case the bond issue was admittedly for a public purpose and its character has not been changed by the maturity of the bonds and coupons.

The directors express concern as to where they will get the money to make the payment due. Section 247.130, subd. 4 provides: "Before or at the time of issuing general obligation bonds, the board of directors shall provide for the collection of an annual tax, to be levied upon all taxable property within the district sufficient to pay the interest on such bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the date of such bonds; * * *." To the same effect, see § 26(f), Art. VI, of the Constitution. We must assume that the directors have discharged their duty of providing for the payment of the interest and principal of the bonds. Then the Water District has the commitment of the City which it is the duty of the directors to enforce. Also the District received as part payment of the purchase price a sum much in excess of all outstanding bonds. Presumably some of

1. It is also interesting to note that the James case, 361 Mo. 814, 237 S.W.2d 117–118, held that §§ 247.160 and 247.170, at least as they stood prior to the amendment of the latter section in 1957, required the remainder of the proceeds of a sale of a water district's property to be administered first for the benefit of the bondholders even though the sale was consummated under part (a) of the act, which was later separated and became § 247.160.

the borrowed money went into these improvements, and the statutes indicate an intent to apply the proceeds of a sale to protection of the bondholders before the remainder may be expended by the district "in the operation, maintenance and improvement of its water distribution system." Since the borrowing of the money from the bondholders was not unconstitutional, we fail to see how its repayment can be. The assignment is denied.

■ The directors say the bondholders are not entitled to the writ of mandamus because the claim is contested and the legal right involved is not clear. On the admitted facts, there is no valid basis to contest the claim and the bondholders' legal rights are clear. The fact that the bondholders may have acquired some additional recourse against the City as a third-party beneficiary of its contract with the District does not detract from the bondholders' remedies against the District. Nor does the decree of the circuit court in the detachment case imposing a liability on the City for a portion of the amount necessary to pay the bonds destroy the bondholders' rights to proceed against the District on its original and still existing promise to pay.

■ Mandamus is a proper remedy to compel a water supply district to pay a bondholder who has an immediate right to be paid the principal and interest of his matured bonds, especially when the district has sufficient funds on hand. State ex rel. Sturdivant Bank v. Little River Drainage District, 334 Mo. 753, 68 S.W.2d 671, 672 [1]; State ex rel. Lane v. Craig, 69 Mo. 565; Flagg v. Mayor, etc., of City of Palmyra, 33 Mo. 440; 55 C.J.S. Mandamus § 144b, p. 252. On the facts, this is a proper case for the remedy of mandamus.

■ The final assignment with which we have to deal is that the court erred in ordering the directors to pay interest from maturity at the rate of six per cent on the amount of principal and interest due. Both

parties rely upon § 408.020 which provides that: "Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; * * *." No decisions are cited. Both the bonds and the coupons are written obligations for the payment of money. The coupons are the evidence of the interest debt to the maturity of the bonds. There is no agreement in either for a rate of interest after they become due and payable. Demand was made promptly on both obligations. In this situation, the statutory rate applies and the trial court did not err in allowing interest accordingly.

We have examined all of appellants' assignments of error necessary to a decision of the case and find them to be without merit. The judgment is affirmed.

LEEDY, P. J., EAGER, J., and HUNTER, Special Judge, concur.

On Motion for Rehearing or to Modify Judgment or to Transfer to Court En Banc

PER CURIAM.

The appellants' attack on the opinion is limited to our approval of the trial court's order that interest at the rate of 6 per cent be paid from maturity upon the principal of the bonds and the interest coupons. Further, the motion deals only with the "interest on the bonds in suit" and does not specifically mention the interest coupons.

The interest coupons, pleaded by the plaintiffs in extenso and admitted by the district's return to the alternative writ of mandamus, were payable to bearer and were expressed to be for the interest provided in the general obligation bonds.

Thus, the coupons are written contracts for the payment of money and, since they made no provision for interest after their due dates, they are clearly within the purview of the statute, § 408.020. 30 Am.Jur., Interest, § 64, p. 54, states the rule as follows: "According to the great weight of authority, interest coupons or notes executed by the maker of a note or bond to evidence instalments of interest bear interest after maturity, although there is no express provision for interest, which rule has consistently been applied in cases of coupons attached to public securities and obligations."

■■ With respect to the bonds themselves, the appellants now cite three cases, two involving promissory notes and the other a certificate of deposit in the nature of a promissory note, which hold that a provision for a certain rate of interest *from date* without more amounted to an agreement to pay interest at the rate specified after maturity as well as before. The bonds sued on were not introduced in evidence and there is no direct proof what their interest provisions were. The assertion in the district's motion for new trial that there was a provision for interest *from date* cannot be accepted because the allegations of a motion for new trial do not prove themselves. Furthermore, it is doubtful if such a provision without more would be controlling in this case which involves bonds with interest coupons attached.

The plaintiffs' petition alleges that all taxable property of the district was pledged "for the prompt payment of said principal and interest at maturity." This allegation was also admitted by the district's return. On the evidence before us, it appears that the bonds provided for the payment of interest to maturity only. Interest coupons were attached to each bond for all of the interest that the water district contemplated or agreed to pay. These coupons did not extend beyond the maturity date of the bonds.

Absent proof that a rate of interest after maturity was agreed upon, the rate provided by law applies. Section 408.020; Reitz v. Pontiac Realty Co., 316 Mo. 1257, 293 S.W. 382, 385[4]. No reason for changing our ruling having been shown, the motion for rehearing or in the alternative to modify the judgment or to transfer to the court en banc is overruled.