STATE ex rel. Marit CLARK, Daniel McGuire, Stephen Gregali, Margaret Vining, and Paul Beckerle, Relators/Appellants,

v.

Gladys GRAY, Defendant/Respondent.

No. 69960.

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 8, 1996.

Patrick J. Connaghan, City Counselor, St. Louis, for relator/appellant.

Tyrone A. Taborn, City Counselor, for defendant/respondent.

CRANE, Presiding Judge.

The relators, five City of St. Louis aldermen, petitioned the Circuit Court of the City of St. Louis for a writ of mandamus to compel the respondent, Register of the City of St. Louis, to file, preserve, and publish a Board bill which had been endorsed as approved but subsequently vetoed by the Mayor before it was returned to the Board of Aldermen as disapproved. Relators appeal the circuit court's judgment in favor of the Register. We affirm.

This case was submitted on a joint stipulation of facts. The stipulated facts reveal that on July 21, 1995, the City of St. Louis Board of Aldermen adopted Board Bill 130 (Committee Substitute) relating to burglar alarm systems. On July 21, 1995, the signed, enrolled copy of Board Bill 130 was sent to the Office of the Mayor, along with other board bills adopted on that date, as required by Article IV, Section 17 of the Charter of the City of St. Louis.

On July 26, 1995, the Mayor signed all of the enrolled copies of the board bills which had been adopted by the Board of Aldermen

on July 21, 1995, including Board Bill 130, and checked the "approved" box on these board bills. On July 26, 1995, the signed, enrolled copy of Board Bill 130 and the enrolled copies of all other signed board bills which had been adopted by the Board of Aldermen on July 21, 1995 were hand-delivered to the Office of the Register along with a letter indicating the Mayor's approval. Respondent, Gladys Gray, was then Register for the City of St. Louis. On July 27, 1995, the Register's office assigned number 63531 to the signed, enrolled copy of Board Bill 130, filed the enrolled copy, and sent the Mayor's letter dated July 26, 1995, but not the enrolled copy of Board Bill 130, to the Clerk of the Board of Aldermen. A copy of the Mayor's letter dated July 26, 1995 was distributed by the Assistant Clerk of the Board of Aldermen to the President of the Board, the Clerk of the Board and the Board's legal counsel. Later that same day, a clerk from the Register's Office requested that the Mayor's letter be returned to the Register's Office, and the original letter was returned to the Register as requested. On August 1, 1995, the Register assigned number 63531 to an approved board bill other than Board Bill 130.

On August 4, 1995, a member of the Mayor's staff delivered to the Assistant Clerk of the Board a letter that stated that Board Bill 130 was disapproved. The signed, enrolled copy of Board Bill 130 was returned with the letter, with the box denominated "disapproved" checked next to the Mayor's signature. Each page of the enrolled copy of Board Bill 130, which was delivered to the Clerk of the Board of Aldermen on August 4, 1995, along with the Mayor's disapproval letter, was stamped Ordinance Number 63531.

The enrolled copy of Board Bill 130 which was delivered to the Mayor after its adoption by the Board of Aldermen on July 21, 1995, was never returned to the Board of Aldermen with the Mayor's approval endorsed thereon. The enrolled copy of Board Bill 130 that was delivered to the Mayor after its adoption by the Board of Aldermen on July 21, 1995, was returned to the Board of Aldermen with the Mayor's disapproval endorsed thereon within twenty days after it was presented to the Mayor. The Board of Aldermen had not finally adjourned at any time from July 21, 1995 through August 4, 1995.

Relators petitioned the Circuit Court of the City of St. Louis for a writ of mandamus. In their petition, relators alleged that the Mayor approved Board Bill 130 and transmitted this "ordinance" to the Register, and that under the city charter the Register was required to preserve and publish the ordinance she had numbered and filed and was prohibited from returning it to the Mayor's office. The Register filed an answer along with a counterclaim for declaratory judgment, which was dismissed prior to this appeal. The parties filed a joint stipulation of facts on November 20, 1995. The trial court filed its order and judgment on December 13, 1995, denying relators' request for a writ of mandamus. The trial court found that the Mayor did not return the bill with his approval to the Board as required by the city charter and therefore it had not been approved. In their appeal from this judgment, relators claim the bill was approved by the Mayor and therefore the Register was required to number, file, publish and preserve it.

On appeal, we review a judgment denying a petition for a writ of mandamus in the same manner as other non-jury civil matters. We sustain the judgment of the trial court unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State ex rel. Kessler v. Shay,* 820 S.W.2d 311, 314 (Mo.App.1991); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The issues on this appeal involve Article IV, Sections 17 and 21 of the City Charter. Section 17 provides in relevant part:

Each bill shall be presented to the mayor immediately after its adoption, but shall not be acted upon by him (except it be an emergency measure) within ten days after its adoption. He shall within twenty days after its presentation to him return it with his approval or disapproval endorsed thereon to the board of aldermen, or, if said board shall have finally adjourned, to the register. Failure so to return any bill within said time shall constitute approval

thereof by the mayor. If the mayor approves the bill, or fails to return it as and when above provided, it shall become an ordinance, subject to the referendum provisions of this charter. If he returns it to the register, with his disapproval endorsed thereon, after said board shall have finally adjourned, but within said twenty days, it shall not become an ordinance. If he returns it to said board, with his disapproval endorsed thereon, within said twenty days and before said board shall have finally adjourned, said board shall reconsider it. If, on such reconsideration, two-thirds of all the members vote to pass the bill, the presiding officer shall certify that fact thereon over his signature and thereupon the bill shall become an ordinance, subject to the referendum provisions of this charter; otherwise it shall not become an ordinance.

Section 21 provides:

Every ordinance shall be immediately sent to the register, and by him numbered, filed and preserved in his office. Every ordinance shall be published within ten days after its approval by the mayor or adoption over his veto in the paper or papers doing the city publishing.

 The Register's duty to number, file, preserve and publish extends only to validly enacted ordinances. *Braddy v. Zych,* 702 S.W.2d 491, 492 (Mo.App.1985). Accordingly, we first address the issue of whether Board Bill 130 became an ordinance. Under Section 17 of the Charter, a bill passed by the Board "shall become an ordinance" if the Mayor approves the bill, or fails to return it within twenty days. The trial court found the bill was not approved because a copy of the bill endorsed "approved" was not returned to the Board of Aldermen within 20 days.

Relators contend that, once the Mayor signed Board Bill 130 and sent the endorsed copy to the Register indicating his approval, it became a valid ordinance. Relators argue that the portion of Section 17 of the Charter which directs the Mayor to return the endorsed board bill to the Board of Aldermen (when not adjourned) within twenty days with his approval or disapproval is a directory provision, rather than a mandatory provision, and therefore return to the Board was not required for approval. Relators also assert that once the Mayor sent the endorsed copy of Board Bill 130 indicating his approval to the Register, and the Register forwarded the letter indicating that approval to the Board, the Mayor had relinquished control of the bill and no longer had the authority to revoke his approval.

Article IV, Section 17 of the Charter requires that: "[The mayor] shall within twenty days after its presentation to him return it with his approval or disapproval endorsed thereon to the board of aldermen, or, if said board shall have finally adjourned, to the register." Section 17 further provides: "If the mayor approves the bill ... it shall become an ordinance." The Board of Aldermen had not finally adjourned at any time from July 21, 1995 through August 4, 1995. According to the plain language of the Charter, because the Board was in session, the proper depository agent for an approved bill was the Board of Aldermen and not the Register.

 Return to the Board of Aldermen was a mandatory step in the approval process. A bill does not become an ordinance until the mandatory charter or statutory provisions governing the adoption of municipal ordinances are complied with. *Steiger v. City of Ste. Genevieve,* 235 Mo.App. 579, 141 S.W.2d 233, 236 (1940); *Hatfield v. Meers,* 402 S.W.2d 35, 43–45 (Mo.App.1966). Further, all charter or statutory requirements as to the method in which an ordinance shall be introduced, and the manner in which it shall be considered, are, when reasonably calculated to induce deliberation, mandatory in their nature, and must be complied with. *Id.* at 45.

 The City Charter gives the Mayor a twenty day deliberation period in which to approve or disapprove a bill. Where the Mayor is made an integral part of the lawmaking power, his approval of legislative action is essential to the validity of an ordinance. *State ex rel. City of Centralia v. Wilder,* 211 Mo. 305, 109 S.W. 574, 577 (1908); *Parker–Washington Co. v. Field,* 202

Mo.App. 159, 214 S.W. 402, 403 (1919). Under the Charter of the City of St. Louis, the mayor is a part of the ordinance-enacting power of city government and his concurrence in legislative action is essential to its validity unless the ordinance is passed over his veto. *See State v. Butler*, 178 Mo. 272, 77 S.W. 560, 579 (Mo.1903) (construing similar predecessor to Section 17).

Where the mayor or chief executive is given this power, during the time legislation is under the chief executive's custody and control, nothing prevents the chief executive from reconsidering any action as to his approval or disapproval of the ordinance. *See Pulskamp v. Martinez*, 2 Cal.App.4th 854, 3 Cal.Rptr.2d 607, 612 (Cal.App.1992) (mayor); 82 C.J.S. Statutes § 51(b) at 84 (governor). As long as the bill remains in the chief executive's custody and control he may change his approval to disapproval. *People v. Hatch*, 19 Ill. 283, 288 (1857) (governor erased approval before returning to house of representatives). *See also People v. McCullough*, 210 Ill. 488, 71 N.E. 602, 604–05 (1904). However, once a chief executive has relinquished possession of legislation with his or her signature and transmitted it to the appropriate depository agent, the bill's status as a properly enacted law "becomes immutable." *Pulskamp*, 3 Cal.Rptr.2d at 612. *See also City of Atlanta v. East Point Amusement Co.*, 222 Ga. 774, 152 S.E.2d 374, 376 (1966) (mayor); 82 C.J.S. Statutes § 51(b), at 84.

In this case, the Mayor did not return the endorsed copy of Board Bill 130 with his approval to the Board of Aldermen, which was the specified depository in the Charter when the Board was in session. Return to the Register did not satisfy this charter requirement. The Mayor, therefore, did not relinquish control of the bill and had the authority to disapprove the bill within the twenty day time period.

Since the bill was not approved, it did not become an ordinance. The Register's duties under Article IV, Section 21 of the Charter did not arise. Relators failed to show a clear, unequivocal and specific duty presently exists which the relator, the City Register, refuses to perform.

The judgment of the trial court is affirmed.

GERALD M. SMITH, and PUDLOWSKI, JJ., concur.